# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Aquapoly Equipment Company,

       Plaintiff and Third-Party
       Plaintiff,

                                  Civ. No. 09-514 (RHK/JJG)
                                  **MEMORANDUM OPINION
                                  AND ORDER**

v.


AEC, Inc.,

       Defendant,

v.


Aquapoly Equipment Company, LLC,


       Defendant and Third-Party
       Defendant.

Courtney M. Strean, Jeffrey W. Thone, Stephenson, Sanford & Thone, PLC, Wayzata, Minnesota, for Plaintiff.

Elizabeth Shields Keating, John Edward Connelly, Faegre & Benson LLP, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

In this action, Plaintiff Application Equipment Company[1] asserts claims for breach of contract, misrepresentation, and unjust enrichment against the Defendant, AEC, Inc. ("AEC"), seeking to recover commission payments due under a 2001 settlement agreement. AEC has moved to dismiss. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

**BACKGROUND**

AEC is a Delaware corporation that manufactures industrial equipment and Plaintiff is a Minnesota corporation that served as a sales representative for AEC. (Compl. ¶¶ 1-3.) Beginning in the 1970's, Plaintiff sold AEC "equipment to business enterprises throughout Minnesota, Wisconsin, North Dakota and South Dakota and received a commission based on its sales." (Id. ¶ 3.) In 2000, a dispute arose between the parties concerning the exclusivity of Plaintiff's sales territory, resulting in a lawsuit being filed in Hennepin County District Court and removed to this Court. (Id. ¶¶ 4-5.) After a 2001 settlement conference, Plaintiff contends that the parties entered into an agreement in which it "agreed to relinquish its claim that it had acquired a permanent exclusive sales territory in consideration for AEC's agreement to make certain payments to [Plaintiff] based on sales generated by [Plaintiff]." (Id. ¶ 6.) After this alleged

---

[1] In its memorandum, Plaintiff stated that it has changed its name from "Aquapoly Equipment Company" to "Application Equipment Company." (Mem. in Opp'n at 6.) However, it requested AEC's consent to change the case caption in this lawsuit to a different name, "Application Engineering Company." (Id.) As of the date of this Order, the Court has not been given notice of a case name change. Because of the present confusion over the proper name of Plaintiff, it will be referred to throughout this Order as "Plaintiff."

settlement agreement was made, it continued to sell AEC's equipment until December 31, 2005.  (Id. ¶¶ 7-8.)

Plaintiff claims that AEC was required under the terms of the settlement agreement to pay it an additional 1% "in excess of the standard commission rate or a minimum of $34,000 for sales generated by [Plaintiff] in 2002 and 2004," but that it has not received these additional commissions.  (Id. ¶¶ 9-11.)  On January 20, 2006, Plaintiff's counsel wrote a demand letter to AEC, requesting an accounting and payment of the additional commissions, which AEC denied.  (Id. ¶¶ 10-11.)

Plaintiff claims that a binding agreement was reached between the parties soon after the 2001 settlement conference.  However, while counsel for the parties exchanged several drafts, no agreement was formally executed.  (Id. ¶¶ 14, 17.)  During this time, Plaintiff contends that AEC made "numerous representations" indicating that it was going to sign the settlement agreement, but that it had not yet received the contract for signature.  (Id. ¶¶ 1, 15.)  According to Plaintiff, AEC also stated, "we know what the agreement is," assuring Plaintiff that a signed agreement was unnecessary.  (Id. ¶¶ 2, 15.)  Plaintiff claims that these statements were "materially false and misleading and were designed to induce [Plaintiff] to continue selling AEC's products when, in fact, AEC has no intention of paying [Plaintiff] the amount(s) promised as part of the litigation settlement."  (Id. ¶ 17.)

In this action, Plaintiff asserts claims of breach of contract, misrepresentation, and unjust enrichment.  (Id. ¶¶ 9-21.)  AEC now moves to dismiss for lack of standing and for judgment on the pleadings for failure to file suit within the statute-of-limitations period.

**ANALYSIS**

## I.      Subject-matter jurisdiction

### A.      Standard of Review

AEC contends that Plaintiff does not have standing to pursue its claims.  A
challenge to a plaintiff's standing implicates the Court's subject-matter jurisdiction.  On a
motion to dismiss for lack of subject-matter jurisdiction, a defendant may challenge the
plaintiff's complaint either on its face or on the truthfulness of its proffered facts.  See,
e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d
724, 729 n.6 (8th Cir. 1990).  In a factual challenge to jurisdiction, a court may consider
matters outside the pleadings.  See Titus, 4 F.3d at 593; Osborn, 918 F.2d at 729 n.6.
Furthermore, "no presumptive truthfulness attaches to the plaintiff's allegations, and the
existence of disputed material facts will not preclude the trial court from evaluating for
itself the merits of jurisdictional claims."  Osborn, 918 F.2d at 730 (citing Mortensen v.
First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1977)).  The plaintiff has the
burden of proving that jurisdiction exists.  Id.

### B.      Analysis

AEC asserts that "plaintiff has no right to use the name 'Aquapoly' at this time or
to assert any claim against AEC in the name of either the former or current sales
representative entity."  (Def. Mem. at 8.)  This argument is premised on a second
settlement agreement executed in 2008 between Plaintiff and a Wisconsin-based
company, Aquapoly Equipment Co., LLC ("Aquapoly-Wisconsin").  (Second Am.
Answer Ex. M.)  In this agreement, Aquapoly-Wisconsin acquired Plaintiff's "rights to

sell AEC equipment" on January 1, 2002. (Id.) However, the settlement agreement specifically provided that Plaintiff retained its "right to all proceeds from the AEC litigation settlement." (Id.) It also provided that Plaintiff was to "change its name within 30 days" so that it was no longer known as "Aquapoly." (Id.)

AEC asserts that while the 2008 settlement agreement "purportedly reserves the rights of [Plaintiff] to proceeds from the 2001 settlement, . . . it in no way reserves the right to re-litigate the pre-2002 dispute on behalf of 'Aquapoly.'" (Def. Mem. at 9 (emphasis in original).) Thus, AEC argues that although Plaintiff preserved its right to payments, it did not properly preserve its ability to enforce that right. The Court does not agree.

The 2008 settlement agreement makes clear that that parties intended Plaintiff to retain its ability to receive the additional commission payments stemming from the 2001 settlement agreement with AEC. It would be meaningless to preserve the right to payment without also preserving the ability to enforce that right. Under Minnesota law, terms of a contract are "given a meaning in accordance with the obvious purpose of the contract." Isaacs v. Am. Iron & Steel Co., 690 N.W.2d 373, 377 (Minn. Ct. App. 2004). Accordingly, the Court finds that Plaintiff has standing to enforce its alleged right to additional commission payments under the 2001 settlement agreement.

The two cases cited by AEC in support of its argument are not persuasive. First, the holding in Star Windshield Repair, Inc. v. Western National Insurance Co., 744 N.W.2d 237, 238 (Minn. Ct. App. 2008), has recently been reversed. Star Windshield Repair, Inc. v. W. Nat'l Ins. Co., 768 N.W.2d 346, 347 (Minn. 2009). Second, the

Minnesota Supreme Court opinion in <u>Hayday v. Hammermill Paper Co.</u>, 223 N.W. 614, 615-16 (Minn. 1929), is inapposite because it does not address the ability of a party to enforce a contractually retained right, but rather the law of assignment.

AEC also contends that Plaintiff does not have the right to bring suit under the name "Aquapoly" (Def. Mem. at 9), and Plaintiff concedes this point. (Mem. in Opp'n at 6.) In its memorandum, Plaintiff states that it has changed its name from "Aquapoly Equipment Company" to "Application Equipment Company." (<u>Id.</u>) However, it requested AEC's consent to change the case caption in this lawsuit to a different name, "Application Engineering Company f/k/a Aquapoly Equipment Company." (<u>Id.</u>) Despite the confusion over Plaintiff's newly created name, it seems clear that any name change will resolve AEC's objection.

## II.     Statute of limitations

AEC contends that all of Plaintiff's claims are barred by the applicable statutes of limitations. In Minnesota, claims for breach of contract, misrepresentation, and unjust enrichment each have a six-year limitations period. Minn. Stat. § 541.05, subd. 1. Plaintiff commenced this action in state court on February 2, 2009. Accordingly, the limitations period bars any claims arising prior to February 2, 2003.[2]

---

[2] It has been brought to the Court's attention that there is a dispute as to the precise date at which the statute of limitations period commenced. However, this disagreement need not be addressed for the purposes of the present Motion because, as the Court describes below, there is insufficient information to rule on the statute of limitations defense at this juncture.

## A.    Standard of Review

The Court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard of review as a motion to dismiss under Rule 12(b)(6).  EEOC v. Nw. Airlines, Inc., 216 F. Supp. 2d 935, 937 (D. Minn. 2002) (Davis, J.).  The Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), sets forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6).  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Id. at 547.  Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do."  Id. at 555 (citation omitted).  Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery."  Id. at 561 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible."  Id. at 570.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Id. at 555.  A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein.  Id. at 556.  Accordingly, a well-pleaded complaint can survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. (internal quotation marks and citation omitted).

**B.     Contract Claim**

The statute of limitations period for a breach-of-contract claim commences upon breach. McClure v. Davis Eng'g, LLC, 716 N.W.2d 354, 359 (Minn. Ct. App. 2006). However, determining the time of breach is difficult, if not impossible, when the precise terms of the contract in question are unknown. In this case, the body of the Complaint is silent as to when the additional commission payments were to be paid under the settlement agreement. If the Court cannot discern when the additional commission payments were due, the Court cannot determine the time of breach. Therefore, a dismissal for failure to file suit within the statute of limitations period is premature.[3]

The parties have differing views on when breach occurred in this case. AEC contends that the breach occurred sometime in 2001 or 2002, because the additional commission payments were to be made annually. (Reply Mem. at 2.) Plaintiff contends that breach did not occur until 2006, because the additional commission payments were not due until the parties' contractual relationship ended and a demand was made. (Mem. in Opp'n at 8.) However, this dispute is largely irrelevant because even if it were established that the additional commission payments were to be disbursed annually, the statute of limitations would only bar Plaintiff's claim as to those payments due prior to

---

[3] AEC argues that the statute of limitations period began to run in February 2002 because Plaintiff ended its contractual relationship with AEC at that time by selling "its rights and obligations as an AEC sales representative." (Def. Mem. at 7.) However, the pleadings provide insufficient information regarding the terms of the alleged 2001 settlement agreement between Plaintiff and AEC to determine whether the agreement would be terminated by the subsequent agreement between Plaintiff and Aquapoly Wisconsin. Moreover, as described above, the 2008 settlement agreement makes clear that the parties intended Plaintiff to retain its ability to receive the additional commission payments from AEC.

February 2, 2003. See Township of Normania v. Yellow Med. County, 286 N.W. 881, 884 (Minn. 1939) (holding that contractually required installments that were to be made within six years of the commencement of the lawsuit were not barred by the statute of limitations even when claims for older installments were time-barred). Thus, for the additional commission payments that were due after February 2, 2003, the statute of limitations period has not run.[4]

### C.     Misrepresentation claim

The statute of limitations for a misrepresentation claim begins to run when "the aggrieved party [discovers] the facts constituting the fraud." Bustad v. Bustad, 116 N.W.2d 552, 555 (Minn. 1962). However,

> The facts constituting the fraud are deemed to have been discovered when, with reasonable diligence they could and ought to have been discovered. The mere fact that the aggrieved party did not *actually* discover the fraud will not extend the statutory limitation if it appears that the failure to sooner discover it was the result of negligence, and inconsistent with reasonable diligence.

Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn. Ct. App. 1985) (internal quotation marks and citation omitted) (emphasis in original). Plaintiff asserts that because of AEC's misrepresentations, it continued to sell AEC products under the belief that it was going to receive additional commission payments. As noted above, it is unclear when the additional commission payments were due, and therefore, it is equally unclear as to when Plaintiff should have become aware that AEC's alleged promises of

---

[4] AEC contends that Plaintiff's unjust-enrichment claim should be dismissed because the breach-of-contract claim is the underlying basis for unjust enrichment. (Def. Mem. at 5.) Because the contract claim will not be dismissed, the unjust enrichment claim will also survive.

payment were false.  Therefore, a dismissal for failure to comply with the statute of limitations is inappropriate at this early procedural posture.

AEC also argues that dismissal of the misrepresentation claim is required because Plaintiff has failed to plead the alleged misrepresentations with particularity.  The Court agrees.

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud."  This requirement mandates that plaintiffs "plead such facts as the time, place, and content of the defendant's false representations." United States v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006).  Plaintiff claims that after the 2001 settlement conference, the parties' counsel "exchanged numerous drafts of sales representative agreements."  (Compl. ¶ 14.)  During this time, Plaintiff contends that AEC made several representations indicating that it was going to sign the settlement agreement, but that it had not yet received the contract for signature, and also stated, "we know what the agreement is."  (Id. ¶ 15.)  However, the Complaint does not describe the time or the location where these statements were made.  In addition, with regard to the statement "we know what the agreement is," the Complaint does not give any detail as to why this statement was false or misleading.  Certainly, the context of the conversation in which this statement was made is necessary to determine its allegedly false or misleading nature.  If AEC made misrepresentations about the terms of the

settlement agreement and the payment of additional commissions, such misrepresentations need to be set out explicitly in the Complaint.[5]

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that AEC's Motion to Dismiss (Doc. No. 15) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's misrepresentations claim (Compl. ¶¶ 13-18) is **DISMISSED WITHOUT PREJUDICE** with leave to replead with particularity.[6]

Dated: October 6, 2009

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[5] In an Affidavit submitted to the Court, Plaintiff's President, Dan Williams, stated that he relied upon AEC's "continuing assurances." (Williams Aff. ¶ 14.) While the Affidavit will not be considered for the purposes of this Motion, the Court notes that these alleged "assurances" are absent from the Complaint and must be pleaded with particularity to be considered.

[6] Plaintiff has moved the Court for leave to supplement its Memorandum in Opposition to the instant Motion. (Doc. No. 40.) The Court denies this Motion as the additional arguments Plaintiff has requested to assert would not alter the Court's analysis.