# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Applied Equipment Company,

  Plaintiff,

               Civ. No. 09-514 (RHK/JJG)
               **MEMORANDUM OPINION**
               **AND ORDER**

v.

AEC, Inc.,

  Defendant.

---

Jeffrey W. Thone, Katherine J. Ford, Stephenson, Sanford & Thone, PLC, Wayzata, Minnesota, for Plaintiff.

John Edward Connelly, Elizabeth Shields Keating, Faegre & Benson LLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this action, Plaintiff Applied Equipment Company ("Applied") asserts claims for breach of contract, misrepresentation, and unjust enrichment against Defendant AEC, Inc. ("AEC"), seeking to recover payments due under a 2001 settlement agreement. AEC now moves to dismiss and strike, or in the alternative, for summary judgment. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

## BACKGROUND

AEC is a Delaware corporation that manufactures industrial equipment, and Applied is a Minnesota corporation that previously served as a sales representative for

AEC. In 1978, Applied entered into a contract in which it agreed to pay AEC $180,000 in exchange for certain sales territory. (Williams Dep. Tr. at 25; Thone Aff. Ex. A.) However, a dispute arose between the parties in 1999 concerning the exclusivity of the territory, which resulted in a lawsuit being filed by Applied in this District. (Thone Aff. Ex. 32.)

During a March 2001 settlement conference before United States Magistrate Judge Jonathan Lebedoff, the parties entered into a settlement agreement. (Id.) This agreement was read into the record in open court with the assent of Dan Williams, the owner of Applied, and Thomas Breslin, the CEO of AEC. (Id.; Breslin Dep. Tr. at 18-23; Williams Dep. Tr. at 142-50.) Unfortunately, no recording or transcript of this hearing can be located. (Thone Aff. ¶ 3.) Nevertheless, there is no disagreement between the parties regarding the basic terms of the settlement. Applied agreed to relinquish its claim to an exclusive sales territory and enter into a new contract to sell AEC's products for a period of five years. In exchange, AEC agreed to pay an additional 1% above the standard commission rate, or a minimum of $34,000 for sales generated in 2002 and 2004. The excess 1% commission payment was to be calculated at the conclusion of each calendar year and paid the following January. In addition, Applied was to receive a lump sum payment of $30,000. (Breslin Dep. Tr. at 18-23; Williams Dep. Tr. at 142-50.)

Following the settlement conference, the pending legal action was dismissed, Applied resumed selling AEC products, and the parties exchanged several drafts of a written settlement agreement. (Thone Aff. Exs. D, E, 32, 33, 38, 45-46.) However, a written agreement was never executed because the parties could not agree upon the terms

of a non-compete clause. (Id. Exs. E, G, 33, 45-46.) According to Williams, a meeting occurred in October 2001, at which he and Breslin discussed the non-compete issue. (Williams Dep. Tr. at 170.) Williams informed Breslin of his desire to continue selling certain products, the sale of which was prohibited under AEC's standard non-compete clause. (Id. at 170-77.) Williams claims that Breslin indicated that Applied's sale of such products would not be problematic. (Id. at 177.) It was thereafter agreed that Williams would send a summary of the topics resolved during the meeting to Applied's attorney, who was to draft an addendum to the yet-unsigned settlement agreement. (Thone Aff. Ex. 20.)

A year later, a written settlement agreement still had not been executed. Williams again discussed this issue with Breslin at a meeting occurring sometime in 2003. (Williams Dep. Tr. at 193-95.) According to Williams, Breslin stated that he had not received a copy of the agreement, but that both parties knew "what the agreement was." (Id. at 198-99.) In the spring of 2003, Williams contacted his attorney regarding the status of the written settlement agreement and addendum. (Id. at 163.) Drafts of the agreement, including the addendum, were sent by Applied to AEC's counsel in June and September 2003. (Thone Aff. Exs. 4, 47.) When no response was received, another letter was sent in November 2004. (Id. Ex. 48.) In addition, Williams telephoned Breslin to discuss the matter. (Williams Dep. Tr. at 202-06.) Williams asserts that Breslin stated that he had not yet received or reviewed the settlement agreement. (Id.) To rectify this problem, Williams personally delivered a copy of the agreement and addendum to Breslin's office. (Id. at 207.) In December 2005, Williams sent Breslin an email

requesting an update on the settlement agreement, as a written contract had yet to be executed. (Thone Aff. Ex. 50.) No response was received.

In January 2006, Applied had yet to receive any additional commission payments or the $30,000 lump-sum payment discussed at the 2001 settlement conference. As the five-year term of the sales representative agreement had ended, Applied wrote AEC requesting an accounting and payment of the additional 1% commissions. (Compl. Ex. A.) In response, AEC asserted that it had no legal duty to make such payments. (Thone Aff. Ex. C.) Applied then commenced the instant action, asserting claims of breach of contract, misrepresentation, and unjust enrichment. AEC now moves to dismiss and strike, or in the alternative, for summary judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a

4

genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).[1]

## ANALYSIS

**I.  Contract Claim**

**A.  Statute of Frauds**

AEC asserts that it is entitled to summary judgment on Applied's contract claim as the statute of fraud bars the enforcement of an oral, five-year contract. (Mem. in Supp. at 10-12.) Applied concedes that the statute of frauds is applicable because the contract in question is an "agreement that by its terms is not to be performed within one year from the making thereof." (Mem. in Opp'n at 7 (quoting Minn. Stat. § 513.01(1)).)

Nevertheless, Applied asserts that the statute of frauds has been satisfied because the terms of the settlement were agreed to before Judge Lebedoff, in open court, and on the record.[2] To support this contention, Applied relies on TNT Properties, Ltd. v. Tri-Star Developers LLC, 677 N.W.2d 94 (Minn. Ct. App. 2004). There, the parties had entered into a settlement agreement that was read into the record in open court. Id. at 96-97. It was agreed that the settlement terms would be memorialized in writing, but an agreement was never signed. Id. at 97-98. The Minnesota Court of Appeals held that the statute of frauds did not bar enforcement of the agreement because it "was the product of

---

[1] The Court will resolve the pending Motion on a summary-judgment basis. Therefore, while the Motion is entitled "Motion to Dismiss and Strike or in the alternative for Summary Judgment," the Court need only discuss and apply the summary-judgment standard.

[2] Applied conceded at oral argument that any alleged oral agreement between Breslin and Williams at the October 2001 meeting would not constitute an enforceable contract as the terms of that alleged agreement were never set forth in a signed writing.

extensive negotiation, . . . was read into the record, and all parties advised the court, with counsel present, that they assented to be bound by the agreement." Id. at 100. The court further held that by making a record of the agreement in open court, the requirements of the statute of frauds were satisfied. Id.

Similarly, the statute of frauds does not bar the enforcement of the March 2001 settlement agreement here.[3] Both parties assented to a settlement before Judge Lebedoff, the terms of which were read into the record, with counsel present, in open court. While no transcript or recording of the hearing is available, the parties do not dispute the terms of the agreement that are relevant to this action. Accordingly, the settlement agreement satisfies the strictures of the statute of frauds and is enforceable.[4]

---

[3] AEC asserts in its Reply brief that the agreement reached at the March 2001 settlement conference cannot constitute an enforceable contract because there was no meeting of the minds. (Reply at 3-4.) Specifically, AEC asserts that at the settlement conference, the parties agreed to utilize AEC's standard sales representative agreement for purposes of the new five-year contract, which included a non-compete clause, but that Applied later demonstrated its desire to have a less restrictive non-compete obligation. The Court does not agree that this sequence of events invalidates the contract. Both parties at the settlement conference were aware that they were assenting to the general terms of AEC's standardized sales representative contract. (Williams Dep. Tr. at 150; Breslin Dep. Tr. at 55-57.) Thus, there was a meeting of the minds the day the contract was executed. The fact that the parties may have different understandings of what AEC's "standard" non-compete clause entailed does not invalidate the contract.
   More importantly, counsel for AEC conceded at oral argument that an enforceable contract was created at the March 2001 settlement conference, the terms of which are not in dispute. Apparently, AEC now withdraws its assertion that no contract was executed at the settlement conference.

[4] Applied concedes that it cannot pursue the equitable remedy of unjust enrichment if it has a viable contract claim. (Mem. in Opp'n at 17.) Accordingly, Applied's unjust enrichment claim will be dismissed. See Drobnak v. Andersen Corp., 561 F.3d 778, 787 (8th Cir. 2009) (applying Minnesota law) ("Equitable remedies are available only when no adequate legal remedy exists.").

B.  **Statute of Limitations**

In Minnesota, a claim for breach of contract has a six-year limitations period, which begins to run upon breach. Minn. Stat. § 541.05, subd. 1; McClure v. Davis Eng'g, LLC, 716 N.W.2d 354, 359 (Minn. Ct. App. 2006) (citation omitted). AEC contends that if an enforceable contract exists, Applied's claim for certain additional commission payments and the $30,000 lump-sum payment are barred by the statute of limitations. (Mem. in Supp. at 12-13.) The Court addresses these contentions below.

1.  **Commission payments**

AEC first contends that the statute of limitations bars Applied's claim for the additional commission payments that came due in January 2002 and January 2003. In support of this assertion, AEC argues that the instant action was commenced on February 2, 2009, the date it received service of process at its place of business. (Notice of Removal Ex. A.) If AEC is correct, the statute of limitations would bar all claims arising prior to February 2, 2003. In contrast, Applied asserts that this action was commenced on January 29, 2009, when it served process on the Minnesota Secretary of State pursuant to Minnesota's substituted-service statute. (Thone Aff. Ex. 1, Doc. No. 43.) If Applied is correct, the statute of limitations would bar all claims arising prior to January 29, 2003, allowing Applied to pursue its claim for the January 2003 commission payment.[5]

Applied properly served process on the Minnesota Secretary of State on January 29, 2009, as AEC is a foreign corporation doing business in Minnesota without a

---

[5] Applied does not dispute that its claim for the commission payment due in January 2002 is barred by the statute of limitations, and therefore, this claim will be dismissed.

7

registered agent. (Thone Aff. Ex. F.) That same day, the Minnesota Secretary of State mailed the summons and complaint to AEC. (Thone Aff. Ex. 1, Doc. No. 43.) Thus, service of process was properly effectuated on January 29, 2009. Minn. Stat. § 5.25, Subd. 4; Froland v. Yamaha Motor Co., 296 F. Supp. 2d 1004, 1008 (D. Minn. 2003) (Doty, J.) (holding that service of process is effectuated under the Minnesota substituted-service statute when the Minnesota Secretary of State mails the summons and complaint to the defendant).[6] Therefore, the statute of limitations has not run on Applied's contractual claim for the commission payment that came due in January 2003.

### 2. $30,000 lump-sum payment

AEC next asserts that the statute of limitations has run on Applied's contractual claim for the $30,000 lump-sum payment. The Court agrees.

Applied asserts that the $30,000 payment was not due until a written agreement was signed, and thus, the statute of limitations has not yet began to run.[7] To support this assertion, Applied cites the terms of a draft settlement agreement. (Mem. in Opp'n at 10 (citing Thone Aff. Ex. 4).) However, Applied mischaracterizes the terms of this draft

---

[6] AEC asserts that it is not subject to the service-of-process procedures provided in Minnesota Statute § 5.25 because it is not "doing business" in Minnesota. (Reply at 8.) However, Subdivision 4(b) of Minnesota Statute § 5.25 states that "[a] foreign corporation is considered to be doing business in Minnesota if it makes a contract with a resident to be performed in whole or in part by either party in Minnesota." As determined above, the parties entered into a settlement agreement in March 2001, thereby executing a new, five-year sales representative contract. While the act of settling a lawsuit is not, in and of itself, "doing business" in the state of Minnesota, Minn. Stat. § 303.03, the settlement resulted in AEC entering into a contract with a Minnesota corporation to be performed in Minnesota. As a result, AEC is subject to the service of process rules outlined in Minnesota Statute § 5.25.

[7] Of course, if this assertion were correct, Applied would have no viable contractual claim for the $30,000 lump-sum payment because a written settlement agreement was never executed.

agreement, which actually provides that Applied would receive the $30,000 payment "within seven (7) days of receipt of the Order from the United States District Court for the District of Minnesota approving this Agreement and dismissing the Action with prejudice." (Thone Aff. Ex. 4.) Thus, the parties agreed that Applied would be entitled to the lump-sum payment upon the dismissal of the underlying legal action. This dismissal occurred on March 21, 2001. (Id. Ex. 32.) Therefore, a breach of the settlement agreement occurred when the lump-sum payment was not made after the dismissal of Applied's lawsuit. Because this breach occurred more than six years prior to the commencement of the instant action, the claim is now barred.[8]

## II. Misrepresentation Claim

Applied's second claim is for misrepresentation. AEC asserts that this claim must be dismissed because it is duplicative of Applied's contract claim. The Court agrees and therefore, the misrepresentation claim will be dismissed.[9]

---

[8] Applied cannot save its claim for the $30,000 payment under the doctrine of fraudulent concealment. See Township of Normania v. Yellow Medicine County, 286 N.W. 881, 884 (Minn. 1939) ("[T]he statute of limitations does not run during the time that the defendant fraudulently conceals from the plaintiff the facts constituting the cause of action."). Applied asserts that based on statements made by Breslin, it "believed AEC would account for [contractual] payments on demand or at the conclusion of our relationship." (Mem. in Opp'n at 17.) However, the record is devoid of any statement that could be construed in such a fashion.

[9] On October 6, 2009, the Court dismissed Applied's misrepresentation claim for its failure to plead fraud with particularity, granting Applied leave to amend its claim. (Doc. No. 52.) Applied then filed an Amended Complaint on November 16, 2009. (Doc. No. 53.) However, AEC contends that Applied not only amended its misrepresentation claim, but also amended its contract claim without leave from the Court. As a result, AEC moves to strike these unauthorized amendments. (Mem. in Supp. at 18 n.10.) Parties filing a motion to strike bear the burden of proving that such relief is warranted. Copeland v. Hussmann Corp., 462 F. Supp. 2d 1012, 1023 n.11 (E.D. Mo. 2006). However, AEC has failed to identify what substantive changes have been made in the Amended Complaint, and therefore, the Motion to Strike will be denied.

9

Applied asserts that several statements made by AEC indicated that it "intended to sign the Settlement Agreement, and that, by extension, [it] intended to pay Plaintiff the amounts due under that agreement." (Mem. in Opp'n at 12.) Therefore, Applied's misrepresentation claim is simply a repackaging of its contract claim, as it seeks to rectify the same harm; the failure to make promised additional commission and lump-sum payments. Such a claim cannot stand because "[a] contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of contract." Nw. Airlines, Inc. v. Astraea Servs., Inc., 111 F.3d 1386, 1393 (8th Cir. 1997) (citing Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975)). Accordingly, Applied's misrepresentation claim is duplicative and will be dismissed.[10]

---

[10] Even if not duplicative, the Court notes that Applied's misrepresentation claim would nevertheless be dismissed, as Applied has failed to establish a material misrepresentation of fact. See Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 38-39 (Minn. 1967) (describing the elements of misrepresentation). Applied describes three statements made by Breslin to support its misrepresentation claim: (1) The 2001 statement that Applied's attorney should draft an addendum to the written settlement agreement; (2) the 2003 statement that he had not seen the written settlement agreement but that the parties knew "what the agreement was"; and (3) the November 2004 statement that he had not seen the written settlement agreement. (Mem. in Opp'n at 12-15.)

Breslin's statements that he had not received the written settlement agreement, or that an addendum should be drafted, are not equivalent to promises to sign such an agreement or to pay the amounts described therein. Moreover, even if such promises were made, they would constitute promises to act in the future, which alone cannot constitute actionable fraud absent evidence that the promisor did not intend to perform at the time the promise was made. Kramer v. Bruns, 396 N.W.2d 627, 631 (Minn. Ct. App. 1986). Finally, Breslin's statement that the parties knew "what the agreement was," is too "general and indefinite" to constitute a basis for fraud. Swedeen v. Swedeen, 134 N.W.2d 871, 875 (Minn. 1965).

**CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that AEC's Motion to Strike and Dismiss or for Summary Judgment (Doc. No. 58) is **GRANTED** in part and **DENIED** in part. The Motion is **DENIED** as to Applied's contract claim and the request to strike. The Motion is **GRANTED** as to Applied's misrepresentation and unjust-enrichment claims, which are **DISMISSED WITH PREJUDICE**.[11]

Dated: March 8, 2010

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

[11] This matter is deemed trial ready as of June 1, 2010; the issues remaining for trial are Applied's breach of contract claim, AEC's counterclaim for breach of contract, and the amount of damages, if any, to which each party is entitled.